IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

LAURA G. REYES,

        Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

_____/

No. C 10-04571 JSW

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

    Now before the Court is the motion for summary judgment filed by Plaintiff Laura G. Reyes ("Reyes") and the cross-motion for summary judgment filed by the Commissioner of Social Security (the "Commissioner"). Pursuant to Civil Local Rule 16-5, the motions have been submitted on the papers without oral argument. Having carefully reviewed the administrative record, the parties' papers, and relevant authority, the Court hereby GRANTS IN PART AND DENIES IN PART Reyes' motion for summary judgment and GRANTS IN PART AND DENIES IN PART the Commissioner's cross-motion for summary judgment.

**BACKGROUND**

    Reyes brings this action pursuant to 42 U.S.C. § 405(g) and seeks judicial review of the Commissioner's decision to deny her claim for supplemental security income benefits.

United States District Court

For the Northern District of California

**United States District Court**
For the Northern District of California

## A.     Factual Background.

At the time of this decision, Reyes was fifty-six years old, had nine years of education, and had a past relevant work history as a hand packer/floor worker.  (Administrative Record ("AR") at 27-28, 41-42.)  Reyes bases her claim of disability on cervical disc problems, depression, high blood pressure, and high cholesterol.  (AR at 120.)  Reyes worked as a packer at Rolling Pin doughnut factory from April 1993 until May 2002, which required her to stand, engage in repetitive use of her hands, reach overhead, and lift up to 20 pounds.  (AR at 121, 160-61, 174, 267.)

Reyes was injured at work in 1997, when she fell and injured her buttocks, shoulders, and head.  (AR at 172, 225.)  She lost consciousness and experienced neck and back pain.  (AR at 172.)  An MRI of her cervical spine showed disc bulging at C6-C7.  (AR at 172.)  Reyes' employer then placed her on total temporary disability leave for eight months.  (AR at 29-30, 173, 225.)  She returned to work on temporary partial disability, and her employer accommodated her limitations.  (AR at 173.)  In the meantime, Reyes received several forms of treatments, including a discography in 1998, which demonstrated concordant pain at C6-C7.  (*Id.*)  In 2000, she received cervical facet blocks, a cervical facet neurotomy, and an epidural steroid injection.  (*Id.*)

According to Reyes, her employer told her in May 2002 that she had to do all of the work of a packer, which would require her to stand in front of a conveyor belt, reach overhead frequently, and look down constantly.  (AR at 266-67.)  Reyes claims that she aggravated her neck on May 29, 2002, when she lifted a pallet at work.  (AR at 173.)  Her doctor at the time, Dr. Goldthwaite, told her to stop work and later gave her pain medications.  (AR at 267.)

Reyes had another MRI taken in August 2002, which showed a small central protrusion at C4-C5 and a broad-based bulge at C6-C7 with mild canal stenosis.  (AR at 301-02.)  In September 2002, she underwent a definitive facet neurotomy but remained symptomatic.  (AR at 173.)

In November 2002, Reyes saw Dr. Nayak, who examined her in the capacity of a defense Qualified Medical Examiner in conjunction with a Worker's Compensation claim.  (AR

United States District Court

For the Northern District of California

1    at 266-71.)  Dr. Nayak observed "no remarkable findings, except a guarded range of motion

2    with her neck."  (AR at 269.)  He concluded that because she had been asked to do all duties of

3    a packer in May 2002, Reyes' work activities had possibly aggravated her chronic pre-existing

4    industrial neck and upper back condition.  (*Id*.)  Dr. Nayak diagnosed "chronic neck pain,

5    probably due to cervical disc disease," and found that she was "temporarily partially disabled

6    with the following restrictions: She is precluded from repetitive reaching above her shoulder

7    level, prolonged bending of the neck, lifting no more than 10 pounds.  She should not do

8    conveyor work or pallet work."  (AR at 268-69.)

9         Reyes underwent a cervical discogram in February 2003.  (AR at 298-300.)  The

10   impression was Grade II annular degenerative changes at C6-C7 and of the posterior annular

11   fibers at C3–C4, C4-C5, and C5-C6.  (AR 300.)

12        Reyes started to visit Dr. Perry for pain management in 2003.  (AR at 233.)  In February,

13   Dr. Perry found that the spinous processes of her cervical spine and upper thoracic vertebrae

14   were moderately tender, that her right upper trapezius, right rhomboids, supraspinatus and

15   infraspinatus muscles were markedly tender, and that she had a restricted range of motion.  (AR

16   at 234.)  He diagnosed cervical degenerative disc disease, neck pain, myofascial pain syndrome,

17   and lateral epicondylitis.  (*Id*.)  In July 2003, he also diagnosed probable anxiety disorder and

18   sleep disorder.  (AR at 238.)  In October 2003, Dr. Perry added probable thoracic outlet

19   syndrome, insomnia, and depression to his diagnoses.  (AR at 244.)  He noted that because

20   Reyes would not get complete control of her pain with medications, she should cope through a

21   multi-disciplinary approach, such as "yoga, meditation, biofeedback, massage, acupuncture, etc."

22   (AR at 244.)  Dr. Perry also recommended psychotherapeutic counseling.  (AR at 245.)

23        Throughout 2003, Reyes attended physical therapy once a week.  (AR at 248; *see also*

24   *id.* at 225-30.)  In October and November 2003, the therapist reported that "she is progressing

25   really slow[ly]."  (AR at 243, 248.)  At the therapist's suggestion, Reyes attended Muscle

26   Learning Therapy.  (AR at 250.)

27        When Reyes returned to Dr. Nayak in May 2004, he diagnosed her with "chronic neck

28   and right arm pain."  (AR at 271-75.)  He stated that "there is no change in Reyes' level of

permant partial disability" and concluded that her condition had been "permanent and

stationary" since November 2002. (*Id.*)  He also concluded that Reyes' medical records did not

support the contention that there was an injury at work on May 29, 2002, and that "she has not

lost any pre-injury capacity for lifting, pushing, pulling etc." (AR at 273-74.)  Thus, he

concluded, her need for future treatment was due to the effects of her 1997 injury. (AR at 274.)

Dr. Nayak also wrote that Reyes' "pain complaints are in excess of objective findings and there

is symptom exaggeration." (AR at 274.)  Finally, Dr. Nayak wrote that "there is . . . no change

in my opinion that I had given in my 10/18/03 report" that Reyes could do her regular work and

did not need vocational rehabilitation.[1]  (*Id.*)

In July 2004, Dr. Nayak issued another report after he reviewed Reyes' medical records

from Dr. Perry.  Dr. Nayak opined that Reyes' lack of response to pain medications and report

of high levels of pain were indicative of a psychogenic disorder. (AR at 277.)  He wrote that it

was "medically probable" that she had developed "a Pain disorder, a psychiatric condition," but

deferred definitive opinions on this issue to a psychiatrist. (*Id.*)  He concluded that "from an

orthopedic perspective," Reyes did not need any additional medical treatment for the effects of

her 1997 injury. (*Id.*)

Dr. Bocobo, a treating physician, saw Reyes in August 2005, and he agreed that her

condition was permanent and stationary. (AR at 175.)  In October 2005, Dr. Bocobo agreed

with Dr. Nayak's assessment that Reyes demonstrated symptom magnification. (AR at 279.)

However, Dr. Bocobo found Reyes "had aggravated her neck condition in 2002 from lifting a

pallet" and had "increased neck pain since 2002." (*Id.*)  He did not provide specific limitations

on Reyes' ability to work. (*Id.*)  In 2006, Dr. Bocobo wrote that because Reyes had been unable

to tolerate prescribed medication, he recommended acupuncture. (AR at 281.)  On January 7,

2010, Dr. Bocobo noted that Reyes continually declined oral medications due to past side

effects. (AR at 291.)

---

[1] The October 18, 2003 report is not in the record.

4

**B.     Procedural Background.**

Reyes filed an application for Social Security disability insurance benefits on February 25, 2005, and claimed that she became disabled on May 30, 2002.  (AR at 93-97.)  Reyes filed a second application for benefits on October 30, 2008, along with a request to reopen the prior application dated February 25, 2005.  (AR at 100-03, 117-18.)  In the second application, Reyes claimed that she became disabled on June 14, 2005.  (AR at 100.)  The Commissioner denied the application on December 9, 2008 and did so again upon reconsideration on March 3, 2009.  (AR at 48-57.)  On March 30, 2009, Reyes filed a request for a hearing by an ALJ.  (AR at 60.)

**C.     The Hearing and the ALJ's Decision.**

On January 22, 2010, Reyes attended a hearing before an ALJ.  (AR at 20-43.)  Reyes testified that she can do some household chores but is limited by the pain.  (AR at 33.)  She reported that she took medication to sleep and slept only four hours a night.  (AR at 34-37.)  She described limitations in her ability to walk, reach, open bottles, and look up.  (AR at 35-37.)  Reyes also said that she cannot lift her right arm and must rely on her left arm to perform several functions.  (AR at 37-38.)  She said that the most she could lift and carry is 8 to 10 pounds.  (AR at 38.)

Vocational expert ("VE") Jeff Beeman also testified at the hearing.  (AR at 41-43.)  Beeman testified that an individual who is the same age, with the same education and past work experience as Reyes, and who could perform work at the medium exertional level, with no frequent overhead reaching, could perform Reyes' past work.  (AR at 41.)  Beeman described Reyes' past work as a hand packer/floor worker, DOT No. 920.687-090.  (AR at 41.)

The ALJ found that between June 14, 2005 and December 31, 2007 (the "relevant time period"), Reyes had a severe impairment, degenerative disc disease of the cervical spine, that affected her ability to perform basic work activities.  (AR at 13.)  The ALJ also found that there was insufficient evidence that Reyes had a severe impairment during the relevant time period with regard to her alleged depression.  (*Id.*)  The ALJ concluded that Reyes could perform her past relevant work as a hand packer/floor worker and was not under a disability during the relevant time period.  (AR at 16.)  The Social Security Appeals Council denied Reyes' request

1    to review the ALJ's decision.  (AR at 1-3.)  Reyes appealed to this Court on November 19,

2    2010.  (Docket No. 1.)

3         The Court shall address additional facts as necessary in the remainder of this Order.

4                                    **ANALYSIS**

5         Reyes raises eight arguments in support of her position that she is entitled to benefits.

6    First, Reyes argues that the Court should consider her disability onset date to be May 30, 2002,

7    as alleged in her first application for benefits, as opposed to the onset date of June 14, 2005, as

8    alleged in her second application.  Second, she argues that the ALJ's determination that she did

9    not have a severe mental impairment was not based on substantial evidence.  Third, she argues

10   that the ALJ committed legal error when he did not order a psychiatric consultative

11   examination.  Fourth, she argues that the ALJ's finding that she had residual functional capacity

12   for medium work was not supported by substantial evidence.  Fifth, Reyes argues that ALJ

13   committed legal error when he ignored medical evidence of disabling conditions.  Sixth, she

14   argues that the ALJ committed legal error when he failed to provide sufficient reasons for

15   rejecting the opinion of a treating physician.  Seventh, she argues that the ALJ committed legal

16   error when he failed to provide sufficient reasons for rejecting her own testimony.  Eighth,

17   Reyes argues that this Court should remand this case for an award of benefits.

18   **A.**     **Standard of Review**.

19        A federal district court may disturb the Commissioner's final decision only if the

20   decision contains legal error or is not supported by substantial evidence.  *See* 42 U.S.C. §

21   405(g).  "Substantial evidence means more than a mere scintilla, but less than a preponderance;

22   it is such relevant evidence as a reasonable mind might accept as adequate to support a

23   conclusion."  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  To determine whether

24   substantial evidence exists, the reviewing court looks at the administrative record as a whole,

25   considering both evidence that supports and undermines the ALJ's findings.  *See id.*  "[W]here

26   the evidence is susceptible to more than one rational interpretation," the reviewing court must

27   uphold the ALJ's decision.  *Id.* at 1039-40.

28

United States District Court

For the Northern District of California

6

**B.      Legal Standard for Establishing a Prima Facie Case for Disability.**

Disability is "the inability to engage in any substantial gainful activity" because of a medical impairment which can result in death or "which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ applies a five-step sequential evaluation process to determine whether a plaintiff is disabled. *See* 20 C.F.R. § 404.1520. During the first four steps of this sequence, the claimant bears the burden of proof to demonstrate disability, but the burden shifts to the Commissioner at step five "to show that the claimant can do other kinds of work." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009) (quoting *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)).

The five-step analysis proceeds as follows. First, the claimant must not be engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). Second, the claimant must have a severe impairment. *Id.* § 404.1520(c). Third, if the claimant's impairment meets the duration requirement and meets or equals an impairment listed in Appendix 1 to the regulation (a list of impairments presumed severe enough to preclude work), the claimant will be found disabled without consideration of age, education, or work experience. *See id.* § 404.1520(d). Fourth, if the claimant fails to satisfy step three, the ALJ will assess and make a finding on the claimant's residual function capacity ("RFC"). *Id.* § 404.1520(e). The RFC measurement describes the most an individual can do despite his or her limitations. *Id.* § 404.1545(a)(1). If the claimant has the RFC to perform past relevant work, the claimant will not be found disabled; if not, the ALJ proceeds to step five. *See id.* § 404.1520(f). Fifth, if the claimant is able to adjust to other work in the national economy, the claimant will not be found disabled. *Id.* § 404.1520(g)(1).

**C.      The ALJ Properly Determined the Alleged Onset Date to be June 14, 2005.**

In her reply, Reyes argues that the Court should consider her disability onset date to be May 30, 2002. Specifically, she contends that the ALJ de facto reopened her earlier application when he considered medical evidence that dated back to 2002. Because the onset date impacts all issues raised here, the Court addresses it as a threshold matter.

The Ninth Circuit has found that an ALJ who reconsiders a prior application on its merits may constructively or "de facto" reopen the application. *Lewis v. Apfel*, 236 F.3d 503,

United States District Court

For the Northern District of California

1   510 (9th Cir. 2001).  In *Lewis*, a disability benefits claimant filed a first application in 1991,

2   which the Commissioner denied that year without an administrative hearing.  236 F.3d at 508.

3   The claimant filed for benefits again in 1992 and claimed he had been unable to work since

4   1990.  *Id.*  The Commissioner denied the second application, and the claimant proceeded to a

5   hearing before an ALJ.  *Id.*  The ALJ considered evidence of the claimant's disability, which

6   dated from before the alleged onset date in 1990.  *Id.*  A magistrate judge affirmed the ALJ's

7   decision and concluded *sua sponte* that the denial of the 1991 application had res judicata effect

8   on the issue of whether the claimant was disabled before 1991.  *Id.*  On appeal, the Ninth Circuit

9   reversed and found that the 1991 denial did not have res judicata effect on that issue.  *Id.* at 510.

10  The court held that the ALJ de facto reopened the 1991 application in his decision, because he

11  knew that the 1991 application was denied, because he considered evidence of the claimant's

12  disability from as early as 1989, and because he "accepted without comment the alleged onset

13  date of [the 1990 date]."  *Id.*  Thus in order to reopen the prior application, the ALJ in *Lewis* did

14  more than merely consider evidence from the time period covered by the claimant's first

15  application.

16       The Court has not found any Ninth Circuit ruling that addresses whether an ALJ can de

17  facto reopen a prior application by merely considering evidence from the time period relevant to

18  that application.  Several other circuits, however, have held that the consideration of such

19  evidence, on its own, is insufficient to cause a de facto reopening of a decision.  *See King v.*

20  *Chater*, 90 F.3d 323, 325 (8th Cir. 1996); *Frustaglia v. Sec'y of Health and Human Servs.*, 829

21  F.2d 192, 193 (1st Cir. 1987); *McGowen v. Harris*, 666 F.2d 60, 67-68 (4th Cir. 1981).

22       In *King*, the Eighth Circuit ruled that an ALJ did not de facto reopen an earlier

23  application by merely considering medical evidence that dated from the time period relevant to

24  that application.  90 F.3d at 325.  There, the claimant filed an application and the Commissioner

25  denied it.  *Id.* at 324.  After the applicable impairment standards changed, the claimant filed a

26  second application that alleged the same onset date as the first application.  *Id.*  An ALJ

27  reviewed the second application, considered all of the claimant's medical records, and found the

28  claimant had a disability during the alleged time period.  *Id.*  The issue of whether the ALJ had

reopened the first application was ambiguous; while the ALJ stated that he would reopen the denial of the first application, he awarded benefits as if he had not reopened it.  *Id.*  On appeal, the claimant argued that the ALJ had constructively reopened his claim.  *Id.* at 325.  The Eighth Circuit determined that although the ALJ had considered evidence that dated back to the alleged onset date, he did so only in connection with the second application.  *Id.*  The court concluded that the ALJ did not de facto reopen the earlier application.  *Id.*

Reyes relies on *Lewis* to support her argument that the ALJ de facto reopened her first application when he considered evidence that dated back to 2002.  However, unlike in *Lewis*, the ALJ did not "accept without comment" an onset date earlier than June 14, 2005.  Instead, when he offered reasons that the evidence from 2002 through 2004 was insufficient to support a finding of severe mental impairment, the ALJ expressly stated that "the records with mention of any subjective allegation of mental impairment are prior to the alleged onset date of June 14, 2005."  (AR at 13.)  This statement provides support for the conclusion that the ALJ intended to treat June 14, 2005 as the alleged onset date.

The ALJ's consideration of Reyes' medical records that date from before June 14, 2005 is similar to the ALJ's consideration of evidence from prior to the alleged onset date in *King*.  Like in *King*, the ALJ only considered such evidence in order to determine Reyes' disability during the relevant time period alleged in the second application.  In fact, the ALJ's opinion here is even less ambiguous than in *King*, because the ALJ did not make any reference at all to the onset date of May 30, 2002 or any onset date other than June 14, 2005.  The ALJ appears to have reviewed the medical evidence prior to June 14, 2005 as cumulative medical history and not to have considered Reyes' earlier application on the merits.  Therefore, the ALJ did not de facto or constructively reopen Reyes' first application.  The ALJ properly considered Reyes' alleged onset date to be June 14, 2005.

United States District Court

For the Northern District of California

9

**United States District Court**
For the Northern District of California

**D.   The ALJ's Determination That Reyes Did Not Have a Severe Mental Impairment Was Based on Substantial Evidence.**

Reyes argues that the ALJ's determination that Reyes did not have a severe mental impairment was not based on substantial evidence.[2]  Specifically, she argues that the ALJ improperly discounted evidence of her mental impairment.  Reyes also argues in her reply that the opinion of Dr. Lucia, the psychological consultant, did not constitute substantial evidence that Reyes did not have a severe mental impairment.

**1.    The ALJ Did Not Improperly Discount Formal Psychiatric Treatment in the Record.**

Reyes claims that she was disabled due to depression and argues that the ALJ's determination that she did not have a severe mental impairment was not based on substantial evidence.  Specifically, she argues that, at step two of the sequential evaluation process, the ALJ improperly discounted evidence in the record of formal psychiatric treatment.

At step two of the sequential evaluation process, the claimant has the burden to show that she has one or more "severe" impairments.  *Celaya v. Halter*, 332 F.3d 1177, 1180 (9th Cir. 2003).  An impairment is severe if it would significantly limit the claimant's ability to perform basic work-related activities.  20 C.F.R. § 404.1521(a).  To prove a severe impairment, the claimant must provide medical evidence that consists of signs, symptoms, and laboratory findings.  20 C.F.R. §§ 404.1508; 416.908.   However, a claimant cannot establish the existence of an impairment based on evidence of symptoms alone.  *Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005).  In *Ukolov*, the court distinguished symptoms from signs, and explained that symptoms are "an individual's own perception or description of the impact of his or her physical or mental impairment(s) .... [W]hen any of these manifestations is an anatomical, physiological, or psychological abnormality that can be shown by medically acceptable clinical

---

[2]  Reyes contends that "the ALJ erred when he found that Ms. Reyes does not have a severe mental impairment."  (Br. at 10.)  Reyes does not specifically argue that the ALJ committed legal error.  Instead, she claims that "[t]he ALJ [was] mistaken" when he reached his finding.  (*Id.*)  Reyes, thus, appears to assert that the ALJ's determination was not based on substantial evidence.  Accordingly, the Court addresses Reyes' arguments under that standard.

United States District Court

For the Northern District of California

1    diagnostic techniques, it represents a medical sign rather than a symptom." *Id.* at 1005 (quoting

2    SSR 96-4p, 1996 WL 374187, at *1 n. 2 (July 2, 1996)) (internal quotations omitted).

3           The ALJ found that Reyes did not meet her burden at step two to establish that she had a

4    severe mental impairment.  Specifically, he found that there was insufficient evidence that her

5    depression was a medically determinable mental impairment because the record lacked any

6    formal psychiatric diagnosis, evaluation, or treatment.  (AR at 13.)  The ALJ explained that

7    while the record contained some references to "probable depression with an anxiety disorder, ...

8    these are notations in primary progress notes, without sufficient objective signs and findings

9    reflecting more than minimal functional limitation." (*Id.*)  The ALJ also noted that these

10   references are all from medical opinions written prior to the alleged onset date of June 14, 2005.

11   (*Id.*)  The ALJ also gave significant weight to the opinion of Dr. Lucia, the psychological

12   consultant, who also reported that the record contained insufficient evidence of a severe mental

13   impairment.  (AR at 13 (citing AR at 208-220).)

14          Reyes contends that the ALJ improperly discounted the report from her chiropractor, Dr.

15   Canty, from November 23, 2004.  Dr. Canty noted that Reyes had completed the Beck

16   Depression Inventory, and the results seemed to indicate that she had "borderline clinical

17   depression." (AR at 232.)  Dr. Canty thus recommended a psychological consult.  (*Id.*)

18   Additionally, Reyes argues that the ALJ improperly discounted Dr. Perry's diagnosis of

19   "probable anxiety disorder," "sleep disorder," and "depression" in his reports from July 21,

20   2003 and October 10, 2003, as well as Dr. Nayak's opinion from July 31, 2004 that Reyes had a

21   "probable" pain disorder.

22          First, the ALJ did not improperly discount the evidence to which Reyes refers.  The ALJ

23   mentioned "a few references to probable depression and an anxiety disorder . . . in primary care

24   progress notes," and reasoned that this evidence was not probative because those references

25   were made prior to the alleged onset date.  (AR at 13.)  Second, the evidence to which Reyes

26   refers was insufficient to establish a severe impairment because it is based only on symptoms.

27   Dr. Canty's report is based only on Reyes' own perceptions and descriptions, which are

28   insufficient to establish the existence of an impairment under *Ukolov*, 420 F.3d at 1005.  As the

                                                    11

Commissioner points out, the Beck Depression Inventory is a questionnaire that relies on a patient's self representations.  (*See* AR at 232 (describing Beck's Depression Inventory as a "[s]elf reporting measure[] of pain and disability."))  Dr. Perry and Dr. Nayak's suspicions of "probable" mental disorder are similarly based only on Reyes' self reports.  These reports lack the requisite "medical evidence that consists of signs, symptoms, and laboratory findings."  20 C.F.R. § 404.1508; *see also Ukolov*, 420 F.3d at 1005.

### 2.    The Opinion of the Psychological Consultant Constituted Substantial Evidence That Reyes Did Not Have a Severe Mental Impairment

In her reply, Reyes also argues that the ALJ improperly relied on the opinion of Dr. Lucia as evidence that Reyes did not have a severe mental impairment.  The Ninth Circuit has held that "[t]he findings of a nontreating, nonexamining physician can amount to substantial evidence, so long as other evidence in the record supports those findings."  *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996).

Reyes claims that it is well-settled law that the opinion of a nontreating or nonexamining physician *cannot* constitute substantial evidence that a claimant has or does not have a severe impairment.  (Reply at 1 (citing *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995); *Erickson v. Shalala*, 9 F.3d 813, 818 n. 7 (9th Cir. 1993)).)  When the court stated this rule in both *Lester* and *Erickson*, it cited *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990).  Reyes misinterprets the rule.  The court in *Pitzer* dealt with the issue of when an ALJ can reject the opinion of an examining or treating physician.  It held that the opinion of a nontreating or nonexamining physician cannot constitute substantial evidence "that justifies the rejection of the opinion of either an examining physician or a treating physician."  *Lester*, 81 F.3d at 831 (citing *Pitzer*, 908 F.2d at 506.)

Here, the rule derived from *Pitzer* is inapplicable.  The ALJ did not reject a treating or examining physician's opinion in favor of Dr. Lucia's opinion.  Although there were references by primary care physicians from an earlier time period that suggested possible mental impairment, none of those references were conclusive opinions and none of them were made during the relevant time period, *i.e.*, subsequent to the onset date of June 14, 2005.  The ALJ did

United States District Court<br/>For the Northern District of California

not expressly reject them. Instead, the ALJ relied on Dr. Lucia's testimony as substantial evidence that Reyes did not have a severe mental impairment because it was supported by the record in its entirety, as is proper under *Saelee*. Thus, the ALJ properly relied on the opinion of Dr. Lucia to determine that Reyes did not have a severe mental impairment.

The Court finds that the ALJ's determination that Reyes did not have a severe mental impairment was based on substantial evidence. Accordingly, the Court GRANTS, in part, the Commissioner's motion on this basis.

**E.      The ALJ Did Not Commit Legal Error When He Did Not Order a Psychiatric Consultative Examination**

Reyes argues that the ALJ committed legal error when he failed to develop the record with a psychiatric consultative examination to determine whether she had a severe mental impairment. Specifically, Reyes argues that the ALJ had a duty to order a consultative examination for her because she could not afford a psychiatric examination herself. The Ninth Circuit has held that where a claimant's condition without treatment satisfies disability criteria, a court cannot find that the claimant does not have a disability solely because the claimant cannot afford treatment. *Gamble v. Charter*, 68 F.3d 319, 321 (9th Cir. 1995).

In *Gamble*, the Commissioner denied the claimant benefits because it concluded the claimant's condition did not meet or equal the listing for "Inability to use a prosthesis effectively." *Id.* at 320. The claimant's doctor had prescribed the claimant a prosthesis that the claimant was unable to afford. *Id.* The ALJ denied the benefits, and reasoned that the fact that the claimant could not afford the prosthesis did not qualify him for the listing. *Id.* The Ninth Circuit reversed and found that the claimant's inability to afford the prosthesis should not have precluded a determination that he was disabled. *Id.* at 321. The court determined that the claimant's inability to afford the prosthesis met the standard of the listing itself, in other words, that the claimant's inability to afford a prosthesis constituted an "inability to use a prosthesis effectively." *Id.* at 322.

Reyes cites *Gamble* for the simple proposition that claimants cannot be denied benefits because they have failed to obtain medical treatment that they cannot afford. (Br. at 11, citing

United States District Court

For the Northern District of California

1    *Gamble*, 68 F.3d at 321).  Unlike in *Gamble*, there is no evidence in the record that the ALJ

2    found that Reyes did not have a disability because she could not afford treatment.

3            Reyes also asserts that the ALJ should have ordered a psychiatric examination under its

4    duty to develop the record pursuant to 20 C.F.R. § 404.1512(f).  *See also Crane v. Shalala*, 76

5    F.3d 251, 255 (9th Cir. 1996).  Section 404.1512(f) provides that if information is not readily

6    available from the claimant's treatment source, the Social Security Administration ("SSA") has

7    the duty to arrange for a consultative examination.  The Court has not found any case within the

8    Ninth Circuit that interprets Section 404.1512(f).  However, the Tenth Circuit has explained that

9    "the ALJ should order a consultative exam when evidence in the record establishes the

10   reasonable possibility of the existence of a disability and the result of the consultative exam

11   could reasonably be expected to be of material assistance in resolving the issue of disability."

12   *Hawkins v. Chater*, 113 F.3d 1162, 1169 (10th Cir. 1997).  The court went on to say that once

13   the claimant first places in the record "evidence sufficient to suggest a *reasonable possibility*

14   that a severe impairment exists, then, and only then, [does it become] the responsibility of the

15   ALJ to order a consultative examination if such an examination is necessary or helpful to

16   resolve the issue of impairment."  *Id.* at 1167 (emphasis added).

17           Reyes' argument that Section 404.1512(f) imposed a duty on the ALJ to order an

18   examination is unconvincing.  The Court finds the reasoning in *Hawkins* persuasive and

19   concludes that the claimant must put forth evidence that shows *reasonable possibility* of a

20   disability before the SSA's duty to order an examination arises.  To interpret Section

21   404.1512(f) otherwise would, in essence, require an ALJ to order an examination whenever a

22   claimant wanted one.  Here, Reyes never placed the requisite evidence in the record to suggest a

23   reasonable possibility that she had a severe mental impairment.  Rather, the only evidence of a

24   mental impairment was a series of inconclusive notes based on self reports.  Thus the Court

25   finds that this evidence did not trigger the ALJ's duty to order a psychiatric evaluation under

26   Section 404.1512(f).

27           Accordingly, the Court GRANTS, in part, the Commissioner's motion on this basis.

28

**F.    The ALJ's Determination of Reyes' RFC Was Not Supported by Substantial Evidence**

Reyes argues that the ALJ's determination of her RFC to perform medium level work was not supported by substantial evidence.  The RFC is the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c).  The ALJ determines the RFC "based on all of the relevant medical and other evidence" and considers statements from medical sources, "whether or not they are based on formal medical examinations." *See* 20 C.F.R. § 404.1545(a)(3).  The Medical-Vocational Guidelines (the "Guidelines") provide a matrix system for an ALJ to handle claims that involve substantially uniform levels of impairment. *See* 20 C.F.R. Part 404, Subpt. P, App. 2.  The Guidelines categorize certain jobs under one of five levels of physical exertion: sedentary work, light work, medium work, heavy work, and very heavy work.  20 C.F.R. §§ 404.1567(a-e).  "Medium work ... involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c).  In assessing the RFC, the "claimant's credibility becomes important ...." *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

The ALJ found that Reyes had the RFC to perform medium level work except with "no frequent overhead reaching."  (AR at 14.)  In light of that RFC, the ALJ determined that Reyes was able to perform her past relevant work as a hand packer/floor worker, based in part on the testimony of the vocational expert, who testified in response to a hypothetical question that specified the RFC of medium level work.  (AR at 16.)

Reyes is correct that the ALJ did not support his determination of an RFC for medium level work with substantial evidence.  The ALJ's task was to determine the "maximum degree" to which Reyes could sustain performance at her job, and he found that it was the ability to lift 25 to 50 pounds, as is listed under the definition of medium level work. *See* 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c); 20 C.F.R. § 404.1567(c).  The ALJ cites no evidence to support the finding that Reyes could lift up to 50 pounds.  The ALJ failed to support his determination with any evidence that "a reasonable mind might accept as adequate to support [his]

United States District Court

For the Northern District of California

1   conclusion." *See Andrews*, 53 F.3d at 1039.  The ALJ determined that Dr. Nayak's instruction

2   in 2002 that Reyes could only lift 10 pounds was only temporary, based on Dr. Nayak's 2004

3   determination that Reyes "can do her regular work."  (AR at 274.)  However, that determination

4   was not substantial evidence that Reyes could lift as much as 25 to 50 pounds, because Reyes'

5   regular work only required lifting up to 15 or 20 pounds.  (*See* AR at 121, 160-61, 267, 269)

6          As Reyes argues, it seems that the ALJ determined the RFC for medium level work "out

7   of whole cloth."  (Br. at 13.)  The Court finds that the ALJ's determination of Reyes' RFC was

8   not supported by substantial evidence.  Accordingly, the Court GRANTS, in part, Reyes'

9   motion on this basis.

10  **G.     The ALJ Committed Legal Error When He Ignored Relevant Medical Evidence of**
        **Reyes' Disabling Conditions Without Providing Specific, Legitimate Reasons for**
11      **Doing So.**

12         Reyes argues that the ALJ committed legal error when he ignored medical evidence of

13  disabling conditions.  An ALJ commits legal error where the findings completely ignore

14  medical evidence without giving specific, legitimate reasons for doing so.  *See Smolen v.*

15  *Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996) (citing *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th

16  Cir. 1986)).  Reyes claims that the ALJ ignored Dr. Perry's diagnoses of myofascial pain

17  syndrome and chronic pain syndrome in 2003, Dr. Bocobo's 2005 diagnosis of chronic pain

18  syndrome, and Dr. Bonilla's 2008 diagnosis of fibromyalgia.

19         The Commissioner argues that the ALJ did not err by failing to consider Dr. Perry's

20  2003 diagnoses because Dr. Perry made them prior to the onset date.  Similarly, the

21  Commissioner argues that the 2008 diagnosis of fibromyalgia is not probative, because there is

22  no clinical evidence from the relevant time period that Reyes had that disease.  As to Dr.

23  Bocobo's 2005 diagnosis the Commissioner argues that he noted merely "residuals of chronic

24  pain syndrome."  (Opp. at 10.)  The ALJ, however, did not offer these reasons as a basis for

25  ignoring this evidence.  Thus, the ALJ committed legal error because he did not give specific,

26  legitimate reasons as to why he ignored these diagnoses.

27         "[A] decision of the ALJ will not be reversed for errors that are harmless."  *Burch v.*

28  *Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (citing *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th

16

Cir. 1991)). A court is precluded from considering an error to be "harmless unless it can confidently conclude that no reasonable ALJ ... could have reached a different disability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006) (holding an ALJ's failure to consider and comment upon uncontradicted lay testimony was not harmless error). A court may find harmless error where such error was inconsequential to the ultimate disability determination. *Id.* at 1055. Here, the ALJ did not provide specific reasons for why he discredited these diagnoses. Therefore, the Court cannot "confidently conclude that no reasonable ALJ could have reached a different disability determination." *See Stout*, 454 F.3d at 1056. The Court finds that the ALJ's failure to acknowledge the diagnoses is not harmless error.

Accordingly, the Court GRANTS, in part, Reyes' motion on this basis.

**H.      The ALJ Did Not Reject the Opinion of the Treating Physician.**

Reyes argues that the ALJ committed legal error when he failed to provide specific and legitimate reasons as to why he rejected the opinion of her treating physician, Dr. Bocobo. The ALJ is responsible for "resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews*, 53 F.3d at 1039. A treating physician's opinions are generally entitled to more weight than other physicians. *See* 20 C.F.R. § 404.1527(d)(2). This is because such physicians are in a unique position to know claimants as individuals, and because their continuous dealings with claimants enhances their ability to assess the claimants' problems. *See Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988). However, the ALJ "need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin*, 554 F.3d 1219, 1228 (9th Cir. 2009) (quoting *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002)). Where the medical opinions are controverted, the ALJ may reject a treating physician's opinion if he sets forth "specific and legitimate reasons" for rejecting the opinions that are supported by substantial evidence in the record. *See id.* (quoting *Lester*, 81 F.3d at 830). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical

17

United States District Court

For the Northern District of California

1    evidence, stating his interpretations thereof, and making findings." *Magallanes v. Bowen*, 881

2    F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton*, 799 F.2d at 1408).

3          Reyes argues that the ALJ ignored Dr. Bocobo's opinion, in his report dated October 12,

4    2005, that she had increased neck pain since 2002 and, thus, was not able to return to work.

5    (*See* AR at 279.)  Reyes appears to have misconstrued Dr. Bocobo's report.  Dr. Bocobo recited

6    Reyes' own self-reported history when he noted her statement that, since 2002, she had been

7    unable to return to her past work.  (AR at 279.)  Dr. Bocobo did not see Reyes until August

8    2005, so it follows that he did not offer his own opinion that year on her ability to return to

9    work during an earlier time period.  Reyes, in her reply, argues that Dr. Bocobo's remark is his

10   own opinion because he discussed this in his "examination" section of his report.  (Reply at 9

11   (citing AR at 279).)  However, the report does not denote that certain sections are devoted to

12   examination findings.  Instead, the report intermingles Dr. Bocobo's own findings with his

13   summary of Reyes' medical records.  (AR at 278-80.)  In fact, in the paragraph following the

14   remark in question, Dr. Bocobo explains that he based his finding on both "the above findings

15   and review of medical records."  (AR at 279.)  It follows that his remark about Reyes' abilities

16   as of 2002 fell into the latter of those two categories.

17         Reyes further argues that the ALJ ignored Dr. Bocobo's statement that Reyes "had

18   worsening of her neck condition and interim increase in her disability since her industrial

19   injury."  (Br. at 17 (citing AR at 278-79).)  The ALJ did not ignore this evidence either.  The

20   ALJ noted that there were "radiological results demonstrating mild degenerative findings as of

21   the onset date of April of 2005."  (AR at 15.)  In doing so, the ALJ accounted for the fact that

22   there were diagnoses that showed Reyes' degenerative disc disease had become worse after the

23   onset date, but concluded that such findings were mild.  Thus, the ALJ did not improperly

24   ignore any of Dr. Bocobo's opinions.

25         Accordingly, the Court GRANTS, in part, the Commissioner's motion on this basis.

26

27

28

18

**I.     The ALJ Provided Clear and Convincing Reasons for Finding Reyes' Testimony
Not Credible.**

Reyes argues that the ALJ did not provide clear and convincing reasons as to why he

discredited Reyes' testimony and, thus, committed legal error.  If a claimant has produced

objective medical evidence that could reasonably support the pain or symptoms of her

underlying impairment, and there is no evidence of malingering, the ALJ may only reject a

claimant's testimony about the severity of her symptoms for clear and convincing reasons.  *See*

*Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).  For example, the ALJ may

consider: (1) inconsistencies in the record concerning the claimant's symptoms; (2) unexplained

failure to seek treatment; and (3) the claimant's daily activities.  *See Smolen,* 80 F.3d at 1284.

The ALJ must consider the entire record, but the claimant's statements regarding pain or other

symptoms "shall not alone be conclusive evidence of disability."  *See* 42 U.S.C. § 423(d)(5)(A).

"The ALJ must specifically identify what testimony is credible and what testimony undermines

the claimant's complaints."  *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th

Cir. 1999).  Further, evidence of "conservative treatment" is sufficient to discount a claimant's

testimony regarding the severity of an impairment.  *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir.

2007) (citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995)).

Here, the ALJ did provide clear and convincing reasons for finding Reyes' testimony

not credible.  First, the ALJ pointed to inconsistencies in the record concerning Reyes'

symptoms.  Namely, he cited Dr. Nayak's evaluations from 2002 and 2004, in which Dr. Nayak

found that Reyes "did not appear to be in acute distress," she "clearly . . . was not felt to be a

surgical candidate," "she can do her regular work and does not need vocational rehabilitation,"

and that "[f]rom an orthopedic perspective, [she] does not need any additional medical

treatment for the effects of the industrial injury . . ." (AR at 266-77.)

Second, the ALJ determined Reyes was not credible based on a consideration of her

daily activities.  (AR at 15.)  While a claimant need not be "utterly incapacitated" to be disabled

under the Social Security Act, "if, despite his claims of pain, a claimant is able to perform

household chores and other activities that involve many of the same physical tasks as to a

United States District Court

For the Northern District of California

particular type of job, it would not be farfetched for an ALJ to conclude that the claimant's pain does not prevent the claimant from working." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). The ALJ concluded that Reyes's testimony at the hearing that concerned her limitations in daily activities was not credible in light of a contradictory prior disability report in which she reported that her injuries had "no effect" on her ability to care for her personal needs. (AR at 15 (citing AR at 155).) The ALJ specifically identified the disability report as an example of a particular piece of evidence that contradicted Reyes' testimony regarding her daily activities. (AR at 15.)

Third, the ALJ determined that Reyes had been treated conservatively during the relevant time period. (AR at 15; *see also* 167-77, 205-07, 233-65, 292-300.) The ALJ cited reports from Dr. Bocobo and Dr. Nayak in which they recommended "acupuncture and some use of pain patches, due to [Reyes'] disinclination to use medications because of alleged side effects." (AR at 15; *see also* AR at 276, 281, 290.)

The ALJ cited specific evidence that undermined Reyes' testimony regarding her pain, and offered clear and convincing reasons for finding her not credible.

Accordingly, the Court GRANTS, in part, the Commissioner's motion on this basis.

**J.     Further Proceedings Are Appropriate.**

Having concluded that the ALJ's determination of Reyes' RFC was not supported by substantial evidence and that the ALJ committed reversible legal error when he ignored relevant medical evidence, the Court must decide whether it should remand for further proceedings or award benefits. When it is clear from the record that the ALJ would be required to find the claimant disabled had all the improperly rejected evidence been appropriately credited, remanding for the award of benefits is appropriate. *Smolen*, 80 F.3d at 1292. This is not such a case. The ALJ may or may not reach the same conclusion with regard to Reyes' RFC upon considering the evidence that supports her ability to perform light versus medium work. It also is not clear from the record whether an ALJ would be required to make a finding of disability if he were to consider the medical evidence that the ALJ ignored here. Therefore, it is appropriate

to remand for further proceedings.  On remand, the ALJ will have the opportunity to fully

consider the relevant medical evidence and articulate reasons for the RFC determination.

### CONCLUSION

For the foregoing reasons, the Court hereby GRANTS IN PART AND DENIES IN

PART Plaintiff's motion for summary judgment and GRANTS IN PART AND DENIES IN

PART the Commissioner's cross-motion for summary judgment, and this matter is remanded

for further proceedings in accordance with this Order.


**IT IS SO ORDERED.**


Dated:  March 29, 2012

_____

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

United States District Court

For the Northern District of California

21